# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| LAURA DOMBROWSKI,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 3:18-cv-11615<br><br>Hon. Robert H. Cleland, U.S.D.J. |
| UNITED STATES OF AMERICA,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>LAURA DOMBROWSKI, and<br>RONALD MATHESON,<br><br>Counterclaim-Defendant. | |

## ORDER APPOINTING RECEIVER

WHEREAS, Defendant and Counterclaim-Plaintiff United States of America brought its counterclaim in this action to enforce federal tax liens associated with the unpaid federal income tax liabilities of Counterclaim-Defendant Ronald Matheson against the real property located at 54213 Stillwater Drive, Macomb, Michigan 48042 (the "Property");

WHEREAS, on July 6, 2022, this Court held that the United States may

enforce its tax liens against the Property by having the Property sold, free and clear of all rights, titles, liens, claims, and interests of the parties to this action, with the net proceeds of the sale (after the payment of the costs of sale and any real estate taxes due and owing as permitted by 26 U.S.C. § 6323(b)(6)) to be deposited into the Court's registry and then distributed by the Court based upon the priority of the parties to this action;

WHEREAS, on July 6, 2022, this Court also permitted the United States to move for the appointment of an appropriate receiver to market and sell the Property pursuant to 26 U.S.C. §§ 7402(a) and 7403(d);

WHEREAS, the United States has now moved this Court for the appointment of a receiver to sell the Property;

IT IS THEREFORE ORDERED THAT

1. Carol Wright, a licensed broker with Keller Williams Great Lakes, The Monzo Group, is appointed as Receiver for the purpose of assisting in the enforcement of the federal tax liens against the Property, pursuant to 26 U.S.C. §§ 7402(a) and 7403(d). Carol Wright (the "Receiver") is directed to take custody, secure, and arrange for the sale of the Property located at 54213 Stillwater Drive, Macomb, Michigan 48042, which is legally described as follows:

> Lot 198 Penzien Farms Subdivision, according to the plat therof recorded in Liber 132 of Plats, Pages 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, and 42, Macomb County Records.

Parcel: 08-08-177-005.

The Receiver is directed to arrange for the sale of the Property free and clear of any rights, titles, claims, or interests of any of the parties to this action.

2. The Receiver shall have the authority to arrange for the sale of the Property through an appropriate purchase agreement, subject to confirmation by this Court, in any manner approved by the United States. The terms of the purchase agreement(s) shall include the balance of the purchase price paid in cash at closing; shall include an earnest money deposit, in an amount to be approved by the United States, forfeitable upon the purchaser's failure to perform; and shall include that the balance of the purchase price and any forfeited earnest money deposit will be made payable by cashier's check or certified check made out to the Clerk of the United States District Court for the Eastern District of Michigan and deposited into the Court's registry for future distribution in a manner consistent with Fed. R. Civ. P. 67 and LR 67.1.

3. The closing for the Property shall not occur until after the proposed sale of the Property has been confirmed by further order of this Court. On confirmation of the sale, ownership and possession of the Property shall transfer to the buyer, and all interests in, liens against, and titles and claims to, the Property that are held or asserted by the parties to this action are discharged and extinguished. At closing, the purchaser or purchasers shall receive a Receiver's

deed to such purchased parcel executed by the Receiver and the Recording Official of Macomb County, Michigan, shall cause the transfer of the Property to be reflected upon that County's register of title.

4. Unless the exception described in Paragraph 5, below, applies, all persons occupying the Property shall vacate the Property within 30 days of the date of this Order, each taking with them his or her personal property (but leaving all improvements, buildings, fixtures, and appurtenances to the property, and all major appliances such as washing machine, clothes dryer, dishwasher, stove, built-in microwave, and refrigerator). If any person fails or refuses to vacate the Property by the date specified in this Order, the Receiver and the United States are authorized to coordinate with the United States Marshals Service to take all actions that are reasonably necessary to have those persons ejected. The United States Marshals Service is authorized and directed to take any and all necessary actions, including but not limited to the use of reasonable force, to enter and remain on the premises, which includes, but is not limited to, the land, buildings, vehicles, and any other structures located thereon, for the purpose of executing this Order. The United States Marshals Service is further authorized and directed to arrest and/or evict from the premises any and all persons who obstruct, attempt to obstruct, or interfere or attempt to interfere, in any way, with the execution of this Order, including but not limited to refusing to grant access to the Receiver, causing

4

damage to the subject property at any time prior to confirmation of the judicial sale, or otherwise committing waste against the Property. If the United States discovers that the Property is being damaged in any way, the United States Marshals Service is authorized to intervene in any way they deem necessary to stop the damage or waste without further order or authorization from the Court, including by coordinating with other federal, state, or local law enforcement agencies.

5. The obligation to vacate the Property within 30 days as set forth in Paragraph 4, above, shall not apply only if: (A) Plaintiff and Counterclaim-Defendant Laura Dombrowski agrees to and pays rent to the Receiver in the amount of $3,100 per month so that it is received on or before the first day of the month, and the first rent payment shall be in the amount of $6,200 (for two months' rent, so that the Receiver is always ahead by one month in the event of unexpected out-of-pocket expenses or in the event that rent is not paid and Ms. Dombrowski fails to vacate timely, with the Receiver to refund rent for any period after Ms. Dombrowski vacates the premises provided she either gives 15 days' notice of intent to vacate or vacates in accordance with subparagraph (G) of this paragraph). All rent payments paid to the Receiver (less reasonable expenses to maintain the Property) shall be deposited into the Court's registry for future distribution; (B) the premises are kept clean and maintained in a manner acceptable

to the Receiver so that she/he is able to show the Property to prospective buyers; (C) the Property is permitted to be inspected by the Receiver and/or shown to prospective buyers at all reasonable times of day, when all persons occupying the premises may need to leave for a short period of time, provided that the Receiver gives Ms. Dombrowski four hours' advance notice of any inspection or showing (not counting hours between 8 p.m. and 8 a.m.); (D) Ms. Dombrowski pays, timely and in full, all utilities associated with the Property; (E) Ms. Dombrowski maintains the exterior of the Property to the satisfaction of the Receiver (and payment of all associated maintenance expenses shall be responsibility of Ms. Dombrowski); (F) Ms. Dombrowski maintains hazard insurance; and (G) all persons occupying the Property agree to and shall vacate the Property and remove their personal property on or before seven days before the date of the sale closing. In the event that any requirement set forth in (A)-(G) of this Paragraph is not satisfied, then Paragraph 4 shall apply in full.

6. Except as provided in Paragraph 5(G), any personal property remaining on the Property 30 days after the date of this Order is deemed forfeited and abandoned, and the United States, the Receiver, the United States Marshals, or their agents are authorized to dispose of the personal property in any manner they see fit, including sale, in which case the proceeds of the sale are to be applied first

to the costs and expenses of sale and the balance deposited into the Court's registry for future distribution.

7. Up until the date that Ms. Dombrowski vacates the Property pursuant to either Paragraph 4 or 5, above, Ms. Dombrowski shall take all reasonable steps necessary to preserve the Property (including all buildings, improvements, fixtures, and appurtenances on the Property) in its current condition including, without limitation, maintaining a fire and casualty insurance policy on the Property. Further, Ms. Dombrowski, all persons associated with her or acting on her behalf, and all occupants of the Property are hereby restrained and enjoined from interfering in any way with the Property, the Receiver, or the Receiver's efforts to comply with her obligations under this Order, and shall, at no time, commit waste against the Property, do anything that tends to reduce the value or marketability, nor cause or permit anyone else to do so.  Ms. Dombrowski shall not record any instrument, publish any notice, or take any other action (such as running newspaper advertisements, posting signs, or making internet or social media postings) that may directly or indirectly tend to adversely affect the value of the Property or that may tend to deter or discourage potential bidders from participating in the bidding process, nor shall they cause or permit anyone else to do so.  Violation of this Paragraph (or any other provision of this Order) shall be deemed a contempt of Court and punishable as such.

8. The Receiver is directed to take possession of the Property at the time Ms. Dombrowski is required to vacate the Property as set forth in Paragraph 4, above (unless Ms. Dombrowski elects to pay rent, complies with the provisions of Paragraph 5, and remains in possession of the Property pending sale). The Receiver shall have all of the rights and powers necessary to fulfill the Receiver's obligations under this Order, specifically including, but not necessarily limited to, the power to retain the services of a locksmith in order to gain access into and to secure the Property, to advertise the sale of the Property, and to take any action reasonably necessary to protect and preserve the value of the Property prior to sale, the power to enter the Property, manage the Property, collect rents on the Property, and to put the Property into saleable condition, including making expenditures of funds that are first approved by the United States for reasonable and necessary maintenance and minor improvements. The Receiver shall be permitted to add a lockbox to the Property for other agents to show the property to prospective buyers. Any funds advanced by the Receiver for any of the foregoing purposes shall be reimbursed from the proceeds of the sale with priority over all liens or other claims.

9. The Receiver shall, in consultation with the United States, set an initial listing price for the Property, and may reduce the listing price as necessary in the Receiver's judgment.

10. The Receiver is required to submit progress reports to the Court every ninety (90) days from the date of this Order until there is a final confirmation of sale. Counsel for the United States may submit such progress reports on the Receiver's behalf.

11. The Receiver shall (a) be compensated from the proceeds of the sale of the property described above in an amount not to exceed six percent (6%) of the gross sale proceeds, to be split with the buyer's agent, but if the Receiver is also the buyer's agent, then the Receiver's commission shall be limited to five percent (5%) of the gross sale proceeds, and (b) be reimbursed for his reasonable and necessary expenditures to protect and preserve the value of the Property that was first approved by the United States.

12. Counsel for the United States does not represent the Receiver but the Receiver may consult with counsel for the United States regarding her/his responsibilities. The Receiver is not authorized or expected to need to retain counsel for the Receiver but may apply to the Court for authority to do so should it appear to the Receiver that there is some particular reason to do so. Counsel for the United States may assist the Receiver in editing any purchase agreement proposed by or for any prospective purchaser (with any purchaser agreement providing that it is subject to Court confirmation after execution). Any purchase agreement shall provide that the Property shall be offered for sale "as is," with all

faults and without any warranties either express or implied. Any contingencies included in any purchase contract (for example for inspection of fixtures) must be approved by the United States and must be removed within a short (mutually agreed) time after the Receiver signs a purchase agreement (which time shall run during the pendency of a motion for Court approval of the sale), except that any purchase agreement may be made contingent upon the purchaser's ability to obtain conventional title insurance effective at closing.

13.     At a sale closing, the purchase price may be partly used to pay closing costs customarily borne by sellers, as well as any real property taxes allocable to the period prior to closing. The remaining proceeds shall be deposited with the Court

**IT IS SO ORDERED.**

Dated: August 24, 2022              s/Robert H. Cleland
                                    HON. ROBERT H. CLELAND
                                    United States District Judge