**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

LAURA DOMBROWSKI,

     Plaintiff/Counter-Defendant,

v.                                                                    Case No. 18-11615

UNITED STATES OF AMERICA,

     Defendant/Counter-Plaintiff.

_____/

**ORDER DENYING PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO STAY EXECUTION OF THE JUDGMENT PENDING APPEAL AND GRANTING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR ORDER APPROVING SALE**

After a bench trial, the court entered a judgment on July 6, 2022 declaring that Defendant/Counter-Plaintiff the United States of America (the "Government") can enforce the tax liens for Plaintiff/Counter-Defendant Laura Dombrowski's late partner, Ronald Matheson, against the property located at 54213 Stillwater Drive, Macomb, Michigan 48042 (the "Stillwater Property") (ECF No. 70.) On August 24, 2022, the court entered an order appointing a Receiver to sell the property (ECF No. 72). Before the court are (1) Dombrowski's Motion to Stay Execution of the Judgment Pending Appeal, filed on November 18, 2022 (ECF No. 85), and (2) the Government's Motion for Order Approving Sale, filed on November 21, 2022 (ECF No. 82). The motions are fully briefed. Having reviewed the record, the court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the court will deny Dombrowski's motion and grant the Government's motion.

I.  DISCUSSION

A.  Dombrowski's Motion

The Sixth Circuit has rejected Dombrowski's arguments under Federal Rules of Civil Procedure 25 and 54(b). (ECF No. 92.) The court will address the remaining issue as to whether Dombrowski is entitled to a stay pending appeal under Federal Rule of Civil Procedure 62.

In determining whether a stay should be granted, the court considers: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n,* 812 F.2d 288, 290 (6th Cir. 1987); *see Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). "[A] stay is not a matter of right, but is rather an exercise of judicial discretion." *Ohio State Conf. of N.A.A.C.P. v. Husted,* 769 F.3d 385, 387 (6th Cir. 2014).

Dombrowski fails her "heavy burden" of showing that a stay under Rule 62(b) is warranted.

1.  Likelihood of Success on the Merits

Dombrowski has not made a "*strong* showing that [she is] likely to succeed on the merits." *Ohio State Conf. of N.A.A.C.P*, 769 F.3d at 389 (emphasis in original) (citing *Nken v. Holder,* 556 U.S. 418, 434 (2009)). First, Dombrowski posits that Matheson's transfer of money to her is not a "transfer" of an "asset" required for a voidable

transaction. (ECF No. 86, PageID.1767.) The applicable provision, Mich. Comp. Law § 566.35 (1998)[1] provides:

> 1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> (2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

The court first notes that Dombrowski's argument was not raised at trial or previous proceedings and thus is likely deemed forfeited on appeal. *Cone v. Tessler*, 800 F. App'x 405, 409 (6th Cir. 2020). Additionally, it lacks merit. As pointed out by the Government, the word "asset" does not appear in Mich. Comp. Laws. § 566.35, and Dombrowski concedes that a "transfer" includes "payment of money." (ECF No. 85, PageID.1767); *see* Mich. Comp. Laws § 566.31(l) (2010) (current version at Mich. Comp. Laws § 566.31(s)). Even if the "transfer" must be that of an "asset," the money at issue is still an "asset." While "[a]sset does not include any… [p]roperty to the extent it is encumbered by a valid lien," nothing indicates that a "valid lien" – "a lien that is effective against the holder of a judicial lien subsequently obtained by a legal or equitable process or proceedings" – encumbered the money at issue when it was transferred to Dombrowski. Mich. Comp. Laws § 566.31(b)(i), (m) (2010) (current version at Mich. Comp. Laws § 566.31(b)(i), (t)).

---

[1] For the sake of the argument, the court will cite to the version of the statutes that were in effect in 2013 – the time of the transfer. As the government pointed out, the relevant provisions have not been materially altered between 2013 and 2022, even though some of them were renumbered. (ECF No. 88, PageID.1808; ECF No 88-1.)

Dombrowski also claims that Matheson's transfer of money to her is not voidable because it was made "in the ordinary course of business or financial affairs of the debtor and the insider." (ECF No. 85, PageID.1768) (citing Mich. Comp. Laws § 566.38(6)). In so doing, Dombrowski relies on the court's observation that she and Matheson had a "financially entangled" relationship in finding that she was an insider of Matheson and that she had reasonable cause to believe Matheson was insolvent. (ECF No. 66, PageID.1655, 1658.) However, the court has made no finding as to whether Matheson's transfer of money to Dombrowski was made "in the ordinary course of business or financial affairs," as this issue was not raised at trial or in any previous proceedings (and thus was forfeited). (*See* ECF No. 63, PageID.1215-16) (listing the issues of fact and law to be litigated at trial, as stipulated by the parties); (ECF No. 66.) The court found that Dombrowski and Matheson was financially entangled based on how "they co-signed checks, were jointly listed on insurance policies, and held joint title on a truck." (ECF No. 66, PageID.1635; *see also id.*, PageID.1656.) The court made no finding as to whether the transfer of money at issue "was taken in the 'ordinary course', [which] requires a consideration of the pattern of payments engaged in by [Matheson] and [Dombrowski] prior to the transfer challenged." *Morris v. Schnoor*, No. 315006, 2014 WL 2355705, at *9 (Mich. Ct. App. May 29, 2014) (citing *In re D.C.T., Inc.*, 295 B.R. 236, 239 (Bankr. E.D. Mich. 2003)).[2]

---

[2]  Indeed, as nothing indicates a previous demand or receipt of payment by Dombrowski (*see* ECF No. 66, PageID.1655), the transfer at issue between Matheson and Dombrowski was not in the ordinary course of their business or financial affairs. *Morris*, 2014 WL 1355705 at *10 (finding the grant of security interest was extraordinary and not in the ordinary course of business when "there [was] no indication of the previous demand or receipt of a security interest for payment of overdue attorney fees").

4

Additionally, Dombrowski quarrels with the court's observation that a common law constructive trust arose due to Matheson's acquisition of the Stillwater Property through Dombrowski and her brother. (ECF No. 85, PageID.1769-71.) The court adheres to its finding and application Michigan's constructive trust law. But, even if the court erred, as Dombrowski recognizes, no constructive trust was imposed. (ECF No. 85, PageID.1771.) Thus, this issue is immaterial to Dombrowski's likelihood of success on appeal.

### 2.  Likelihood of Irreparable Harm

The second factor is the likelihood that Dombrowski will be irreparably harmed absent a stay. *See Ohio ex rel. Celebrezze,* 812 F.2d at 290. The court recognizes that the prospect of being evicted from one's home and becoming homeless could constitute a threat of irreparable harm. *Sheldon v. Vilsack*, No. 11-10487, 2011 WL 611891, at *2 (E.D. Mich. Feb. 11, 2011) (Ludington, J.) (citing cases in preliminary injunction context). However, Dombrowski already moved out of the Stillwater Property in September 2022, two months before she filed her motion to stay, and nothing suggests an imminent prospect of homelessness. Dombrowski's concern with losing the property alone does not warrant a stay, especially when she raises no serious questions on the merits of the appeal.

### 3.  Interests of Others and the Public

The final factors – concerning the harms to the Government, third parties, and public interest – weigh against staying judgment. Dombrowski recognizes that a stay would cause harm to both the Government and the Receiver. (ECF No. 85, PageID.1774.) "The United States specifically, and the public generally, has a

paramount interest in the collection of taxes." *United States v. Hawthorne,* No. 1:12 CV 3041, 2014 WL 3389111, at *2 (N.D. Ohio July 9, 2014); *United States v. Rodgers*, 461 U.S. 677, 711 (1983) (holding that the Government has a "paramount interest in prompt and certain collection of delinquent taxes"). A contract has been executed for the sale of the Stillwater Property. Further delay would jeopardize the sale, hinder the Government's ability to recover long-delayed unpaid tax at the highest and best offer, undo the Receiver's efforts, and prejudice the under-contract buyer. (ECF No. 82, PageID.1716-17; ECF No. 88, PageID.1816-18; ECF No. 93.)

Having considered the relevant factors, the court will decline to stay the execution of the July 6 Judgment pending appeal.

## B. Government's Motion

The Government asks the court to approve the sale of the Stillwater Property in accordance with a Purchase Agreement executed on November 7, 2022. (ECF No. 82.) In opposition, Dombrowski argues that such a sale is barred by the balancing test delineated in *United States v. Rodgers,* 461 U.S. 677 (1983).[3] There, the Supreme Court held that when a property to which a non-liable third-party had a vested interest, a district court *should* consider several factors in deciding whether the authorize a forced sale under § 7403. *Id.* at 710-11; *see also United States v. Barr*, 617 F.3d 370, 375-76 (6th Cir. 2010) ("*Rodgers* Court did not mandate application of the four-factor balancing test before a district court could order a sale under § 7403.") The factors are:

---

[3]     The court need not address Dombrowski's Rules 25 and 54(b) arguments, which were rejected by the Sixth Circuit. (ECF No. 92). Further, as explained in the portion of this Order denying Dombrowski's request for a stay, she has failed to show a likelihood of reversal on appeal.

6

    (1)    "the extent to which the Government's financial interest would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes";

    (2)    "whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors;"

    (3)    "the likely prejudice to the third party, both in personal dislocation costs and in ... practical undercompensation;" and

    (4)    "the relative character and value of the non-liable and liable interests held in the property."

*Rodgers*, 461 U.S. 710-11.

The court agrees with the Government that Dombrowski misapplied *Rodgers*. Here, Matheson's transfer of money to Dombrowski to enable the purchase of the Stillwater Property was a fraudulent conveyance. Mich. Comp. Laws § 566.35. Consequently, only Matheson, not Dombrowski, had an interest in the property. *See e.g., In re Forbes*, 372 B.R. 321, 324 (B.A.P. 6th Cir. 2007) (upon finding that the transfer of funds to third party to purchase property was a fraudulent conveyance from the debtor, the property belonged to the bankruptcy estate); *In re St. Clair Clinic, Inc.*, 73 F.3d 362 (6th Cir. 1996) (same).

Even if *Rodgers* applies, its factors do not preclude selling the Stillwater Property. The first factor favors the sale because the Government cannot collect

Matheson's tax debt through any other assets. (ECF No. 88, PageID.1817); *Barr*, 617 F.3d at 376 (upholding the district court's determination "that the first factor weighed in favor of foreclosure because 'the United States cannot look to any other asset of [the debtor] to collect"). The second factor also supports the sale, because Dombrowski engaged in the purchase of the Stillwater Property to evade Matheson's tax debt and thus cannot "have a legally recognized expectation" that it would not be levied against Matheson. *Id.* (crediting the second factor little weight because the debtor's wife "participated in the conveyance of four properties… specifically contemplated to frustrate the United States' tax collection efforts."). As to the third factor, the inconvenience of having to relocate – which Dombrowski already did – does not weigh against the sale. *Id.* (upholding the district court's conclusion that "if 'the inherent indignity and inequity of being removed from one's home' automatically precluded foreclosure, 'the government could never foreclose against a jointly owned residence – a result clearly untenable under § 7403.'") Finally, as indicated above, Dombrowski holds no legitimate interests in the Stillwater Property as it was purchased solely by Matheson's funds to avoid his tax liabilities.

Additionally, Dombrowski challenges the validity of the Purchase Argument. First, she argues that the Receiver merely accepted a "contingent offer" with no certainty that the buyer will satisfy the contingencies, and thus the Government's motion is unripe. (ECF No. 87, PageID.1792-93.) However, as demonstrated by the Government, the buyer has met the contingencies of obtaining an approved mortgage for 80% of the purchase price and making an earnest money deposit. (ECF Nos. 89-2, 89-3.) Regarding Dombrowski's claim that the Purchase Agreement lacks the substance

required by the court's Order Appointing Receiver (ECF No. 72), the requisite terms are evident from the face of the contract (ECF No. 82-4; ECF No. 89-1).

Accordingly, the court will approve the sale of the Stillwater Property by the Receiver pursuant to the Purchase Agreement dated November 7, 2022.

## II.  CONCLUSION

IT IS ORDERED that Dombrowski's Motion to Stay Execution of the Judgment Pending Appeal (ECF No. 85) is DENIED.

IT IS FURTHERED ORDERED that the Government's Motion for Order Approving Sale (ECF No. 82) is GRANTED.

                                                      s/Robert H. Cleland    /
                                                     ROBERT H. CLELAND
                                                     UNITED STATES DISTRICT JUDGE

Dated: January 17, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 17, 2023, by electronic and/or ordinary mail.

                                                        s/Lisa Wagner    /
                                                     Case Manager and Deputy Clerk
                                                     (810) 292-6522

S:\Cleland\Cleland\NTH\Civil\18-11615.DOMBROWSKI.MotionstoStaySaleOrder.NH.docx